May it please the Court, Counsel. My name is George Paul Trejo, Jr., and I'm here this morning on behalf of the appellant, Hilario Perez Ochoa. The issue presented to the Court this morning is whether a suspect's confession is a voluntary statement when law enforcement agents make a promise of leniency or, for that matter, more harsh punishment if the Well, there's a dispute over that. The record, as far as I can see, splits it into two parts, talking to us and cooperating with us and furthering our investigation. And doesn't it seem that the promises of leniency related to the second part, which he rejected and said, I'll talk to you, I'm just not going to identify anybody I was working with. That would be the cooperation aspect, Your Honor, but however, there still remains the talking aspect of it. And the talking aspect of it is, in fact, the confession the defendant provided, inculcating himself in the entire underlying drug distribution network. What he refused to do was identify the source. But prior to the talking to the agents, the agents didn't recall specifically making the comments that the appellant attributed to them, but they did not deny making those statements. The district court, in turn No, I believe, Your Honor, they said they did not recall. And what the court did, and ultimately decided in this case, was that under either scenario, the court determined that if, in fact, the promise of leniency was made or the promise or the threat that this is your last opportunity, even if those statements were made, that it didn't make sense to make those statements. And that's what the court did.  And you can't make a difference.   So the court decided it didn't make a difference. What interests and concerns me is the judge also found, however, that Mr. Ochoa's paraphrase said that he did not wish to cooperate, but that he would answer your questions. That's a finding, right? Yes. That that's what was said. There was some dispute about that, too. But on that, and I would think that that was a finding that as to which there isn't clear error, because that's, all right. But that he did not wish to cooperate, but that he would answer questions, and that, in fact, when they asked him questions about other people, he didn't necessarily answer. So he didn't, quote, cooperate. And since the statement that he testified to is that if I cooperate, they would give me leniency, why isn't the judge right that under these circumstances, he was not, in fact, influenced by whatever rule? Well, Your Honor, because I believe when we look at the Guerrero decision, and that cites Huto v. Ross from the Supreme Court, the holding in that particular case is that when these statements are extracted by or obtained by any direct or implied promises, however slight. But the finding here is that they weren't extracted for it by that reason. Even if the statement was made, he rejected the offer, essentially, and went on and answered questions on his own terms, not based on whatever promises were made. Well, the promises or threats, because the other one was. Promises or threats. Yeah. But there was – in other words, there were two findings here, it seems to me. And the second one is that even if the threats were made, and even if they were improper, he rejected the enticement and went on and operated and answered on his own terms and not pursuant to any influence from the threat or promise. Well, that's what I don't think is necessarily that clear from the district court's ruling, Your Honor. The promise of leniency was not linked to the confession. Well, that specific finding, Your Honor, that it was not linked, I think, goes to the of a statement or a confession. And in that regard, you look at the individual, and the individual in this case is an individual who the agents claimed was entirely fluent in English, yet it was the agents who themselves brought in a Spanish-speaking agent to deal with this individual. And then when you have that coupled with the fact that here it is saying, well, it's now or never, and there was no – it was not disputed, there was simply no recollection by the agents that they made a statement to him. You either talk or you don't. My finding is, more importantly here, the DEA agent's promise, in whatever form it took, cannot have induced Mr. Ochoa Perez to confess because he plainly stated that he did not wish to cooperate. And you agree that he did – that there's a finding that that's what he said and that that's not clearly erroneous. Why is this not clearly erroneous either, i.e., the conclusion that it couldn't have induced him to confess because he didn't – said he didn't wish to cooperate and didn't? Right. He didn't cooperate. Now, the fact that he was going to talk to them does not mean that he's going to confess about his own involvement or the fact that he can talk to them about a variety of items, and I think that's where the record is not clear. Talking to the agents does not mean that he's going to be confessing to the agents and does not rise to the level of cooperating with the agents. Talking to the agents could be any one of – a number of items, including his background, his residence, and other items of that nature. And that's where the record isn't clear. He waved his Miranda rights. He spoke to them. He waved them. Then he picked and chose as to what he would talk about. Doesn't that suggest that his will was not overborne, that he was exercising free choice as to what to say and what to say, knowing full well that he had a right to remain silent and that anything could be used against him? I can see where the Court's going with that, but at the same time, Mr. Ochoa wanted to remain silent and said, I don't want to talk about that. And then, interestingly, based upon what he claims the agents told him, suddenly his will is overborne, and he went, okay, now I'm going to tell you and now I'm going to confess. And I think that's what was inappropriate. It wasn't a situation where – a significantly different situation where agents typically tell the suspects that your cooperation will be brought to the attention of the prosecuting attorney. This was a situation, according to Mr. Perez-Ochoa, where the agents specifically said, you talk to us now or it's never. You're not going to get another chance. What do you do with the translator's testimony that there were no promises of leniency in exchange for cooperation? He says, I wouldn't have translated any of that kind of stuff because it's unauthorized. He is the link between the two, speaks both languages, and he utterly disclaims any improper statements. He is, but that he personally translated any of these improper statements. But what we're not disputing is that Mr. Perez-Ochoa does have some limited English-speaking ability, as the initial agent testified. But he says there weren't any, not that I didn't translate them. Well, he said he wouldn't have translated them. He said there weren't any, and if there had been, I wouldn't have translated them. Well, and again, the Court, I don't believe, made a specific finding on that issue, but instead ruled that it didn't matter either way. The holding would be held against the defendant and the waiver and voluntariness issue would be upheld if the government was asserting. But we don't believe that the record is actually clear in that regard, especially when you couple that with the other agent's testimony of his failure to recall and he wasn't sure. If I could reserve my final two minutes. Thank you, Mr. Trejo. Thank you. Good morning. Ron Skippy for the government. On behalf of Mr. Ohms, there is a conflict in the testimony of the agents and the defendant, as Mr. Trejo has pointed out, as to whether any promises were made. However, I respectfully disagree with Mr. Trejo as to what those agents testified to during the course of the proceedings. At E.R. 82 and 84 ---- It's problematic because the judgment didn't make a finding. And there was a conflict and he didn't make a finding. And so the questions are essentially two. One of them is whether on Mr. Ochoa's version of the promise, it would have been an impermissible promise that would have led to an involuntary confession, or this other question of whether he did differentiate between cooperating and answering questions and was not, in fact, cooperating at all. But I don't see how you can get back into the question of what, in fact, happened. Certainly, Judge. Your Honor, Judge Whaley didn't indicate that plainly. The defense stated that he did not wish to cooperate and there was no nexus between any alleged promises by the agents and the subsequent statements of the defendant. And that is borne out by Mr. Ochoa's discretion in answering specific questions. The cooperation discussed initially, where there was an allegation that there would be promises of leniency, was linked to whether or not Mr. Ochoa would tell DEA who his source of supply was, as to the methamphetamine from Oregon and the cocaine from Washington. The exact sequence of how they approached this, ma'am. My recollection of the transcript, Judge, is that after Miranda was given both in English and in Spanish, the agents recounted with Mr. Ochoa what they had found during the search warrant, and then they outlined for him what they would expect as far as cooperation, quote, unquote, cooperation. Although I'm not sure that term was actually used with Mr. Ochoa. Specifically, they wanted to know his source of supply for the methamphetamine and cocaine. Mr. Ochoa then plainly, as Judge Whaley indicated, indicated he would not. Did they hold out any promises of leniency, or if he cooperated, or worse treatment if he didn't in connection with identifying his sources? Your Honor, the agents say no. And both agents said that. And that's the excerpt of the record I was going to refer to at 82 and 83 and 107 and 188. But Judge Whaley, I believe, also, it was implicit in his findings that there was never any kind of threat that the defendant would receive more time if he didn't cooperate. I believe Judge Whaley did. Judge Whaley did hold, and the government seems to be defending, the proposition that even if there were a promise that if he cooperated, he would get less time as opposed to I will talk to the prosecutor. That would be okay. That's a closer call, Your Honor. And as Judge Whaley pointed out, the cases that ---- Judge Whaley did hold that, did he not? He did, Judge. He did. And the cases that Judge Whaley referred to, where he indicated there was no case law that he could find that reflected where a promise of leniency by itself was enough to overcome voluntariness and admission, and the ---- Well, the courts all assume that. I mean, they're all spending a lot of time trying to demonstrate that there wasn't such a promise made, presumably for some reason, because it wouldn't matter. That's what Judge Whaley held, Your Honor. That's right. I think we have to start from the proposition that they promised him leniency. And then the question is whether the record supports Judge Whaley's conclusion that notwithstanding that promise, there's no link, because his behavior demonstrated that he was picking and choosing. I agree, Judge. And as I recounted the chronological flow of events, I believe from the totality of circumstances, Judge Whaley's finding that there was no nexus between the alleged promises and the statements of the defendant as defended by the record. That was one of the first things that the agents asked of the defendant. Will you tell us who your source of supply is? After his waiver, correct? Correct, Judge. This is all after his waiver. And after this, whatever was said was said with regard to promises or non-promises? I'm sorry, Judge. But they asked him his source of supply after whatever promises were or weren't made. In other words, I mean, was there agreement between all of them that after the waiver they said whatever they said about if you cooperate, either we'll talk to the prosecutor or we'll get a lower sentence or whatever, but that was said before they asked him specific questions about sources of supply? That's my reading of the transcript, Judge, yes. If there are no further questions. Thank you, Counsel. Thank you, Judge. Mr. Trejo, you can respond. Overall, was there a slight promise or improper influence of some sort that resulted in Mr. Perez-Ochoa's statements? I think that if the law came out and specifically held that agents should not, under any circumstances, make these promises of leniency or statements to the effect that it's now or never, this is your last chance, you're never going to see me again, but rather simply state and go no further than any cooperation or any statements that you can provide us will be presented to the United States Attorney's Office and a determination will be made at that point. Or even to go beyond and say, you know, perhaps you need to consult with an attorney and have that attorney's assistance in determining whether or not you have information that can rise to the level of substantial assistance and benefit you in some way. That's all I have. Thank you. We thank both counsel. Your participation and oral argument is helpful to this Court in trying to resolve this issue. Thank you very much. The case just argued is ordered submitted. And we'll go on to United States v. Cheryl Holland. Thank you.
judges: Trott, Paez, Berzon